IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LISA DUNN                                                                                    PLAINTIFF

VS.                                                     CIVIL ACTION NO. 3:13cv232-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                                              DEFENDANT

## **REPORT AND RECOMMENDATION**

Lisa Dunn brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Presently before the Court are Plaintiff's motion for summary judgment [9] and Defendant's motion to affirm the Commissioner's decision [11]. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that Plaintiff's motion be denied and that the decision of the Commissioner be affirmed.

### **I. Procedural History**

Dunn was born on January 10, 1974, and was 37 years of age at the time of the ALJ's decision. She has a sixth grade education. Her past relevant work experience is as a short order cook, poultry worker, and cashier. She alleges disability due to chronic obstructive pulmonary disease (COPD). Her alleged onset date, as amended, is April 20, 2009. Dunn filed for disability insurance benefits and supplemental security income on August 12, 2010. Her applications were denied initially and on reconsideration, and she requested and was granted a hearing before an administrative law judge (ALJ), who

determined that Dunn is not disabled. The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner. Dunn then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. **Evidence Before the ALJ**

Dunn's medical records reveal a history of breathing problems since at least 2006, when she presented to Dr. Barry Whites with a history of congestion. R. 263. An x-ray suggested CPOD, R. 262, and a CT confirmed mild bronchiectasis, R. 260. He placed her on Ciprofloxacin for two weeks out of each month. R. 260. She saw him again in February of 2008, at which time Dr. Whites informed her that she needed to stop smoking and that there was not much that anyone could do for her if she did not do so. R. 258. In April of 2009, Dr. Whites stated that a CT scan showed significant bronchiectasis. R. 255. Her medications at this time were Singulair, albtuterol, and Ciprofloxacin.

Dr. Goel performed a consultative examination of Dunn on August 25, 2010. R. 210. Upon physical examination, Dunn was 5'4" in height and weighed 194 pounds. R. 211. She had mild shortness of breath, and Dr. Goel noted wheezes, bilaterally, in all lung fields, with some crackles in the right base. *Id.* His impression was chronic obstructive pulmonary disease (COPD), possible bronchiectasis, and osteoarthritis.

Over the next couple of years, Dunn discontinued her visits to Dr. Whites, apparently for financial reasons, and her treatment consisted primarily of emergency room treatment for acute episodes. Typically this treatment included steroids, inhalers, and antibiotics. On August 31, 2010, she was hospitalized for four days for difficulty breathing and a productive cough. R. 219-21. Discharge diagnosis was COPD exacerbation,

2

nicotine dependence, obesity, and respiratory distress. R. 221. Dunn experienced another acute episode on November 1, 2010, when she was treated at the Morton Family Medical Clinic for COPD exacerbation. R. 225-26. Her condition did not improve, and two weeks later she was hospitalized. R. 240-43. Her next presentation to the emergency room was on January 3, 2011, when she was seen for breathing difficulties and cough with green sputum. R. 245. On February 11, 2011, she was admitted to the hospital for three days for treatment of COPD and hemoptysis. R. 325-27.

Dunn returned to Dr. Whites on March 9, 2011. She was suffering from severe bronchiectasis and airflow obstruction. R. 249. Dr. Whites resumed her cyclic antibiotics, which she had not been taking. *Id.* He noted that Dunn continued to smoke. *Id.* Dunn was seen in the emergency room again on March 29, 2011, for shortness of breath and a cough. R. 296-301.

At the hearing, Dunn testified that she has not worked since 2008 because of breathing problems. R. 29-30. Her condition is aggravated by walking too much, household chemicals, pollen, and smoke. R. 33. She uses inhalers and cough medications to treat her condition; she has also been prescribed antibiotics, but is unable to afford them. R. 36. Dunn is financially unable to go to a physician. R. 34. She stated that she is able to take care of her personal needs, prepares some meals, performs some household chores, drives, and shops. R. 39. She estimated that she could lift ten pounds, stand for 30 minutes to an hour, and walk less than 15 minutes. R. 40-41. Dunn testified that she began smoking at age 16 and continues to smoke approximable ten cigarettes a day. R. 37.

A vocational expert (VE) testified in response to questions by the ALJ and Dunn's attorney. The ALJ posed questions concerning the following hypothetical individual: A person of the same age, education, and work experience as Dunn, limited to sedentary work, who can occasionally balance, stoop, kneel, and crouch, and who must avoid exposure to machinery and unprotected heights. R. 54. The VE responded that such an individual could not return to Dunn's past relevant work, but could perform the jobs of information clerk, order clerk, and surveillance monitor. R. 54-55. In response to a question by Dunn's attorney, the VE testified that if such an individual were to miss at least four days of work per month, there would be no work available. R. 56.

### III. The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He found that Dunn has the severe impairments of COPD and

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

bronchiectasis and the non-severe impairment of obesity.  R. 13-14.  At step three, the ALJ determined that Dunn does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 13.  The ALJ found that Dunn has the residual functional capacity to perform the sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the limitations of climbing only occasionally, balancing, stooping, kneeling, and crouching infrequently, and with not even moderate exposure to hazards such as unprotected machinery and unprotected heights.  R. 15.  Relying upon the testimony of the VE, the ALJ determined that Dunn cannot perform her past relevant work but can perform alternate work and is therefore not disabled.  R. 17-19.

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2]  In his

---

*See* 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

memoranda, Dunn makes essentially two arguments: (1) that the ALJ erred in concluding that Dunn did not meet listings 3.03 or 3.07; and (2) that the ALJ erred in failing to recontact Dr. White to clarify an opinion he had given.

*Listings 3.03 and 3.07*.  Listings 3.03, Asthma, and 3.07, bronchiectasis, have nearly identical structures and criteria.  Each contains two sections, designated A and B, of criteria.  A claimant may meet the listing by satisfying either its A or B criteria.  The A criteria for these listings consist of chronic asthmatic bronchitis (listing 3.03) or impairment of pulmonary function due to extensive disease (listing 3.07) with either $FEV_1$ or FVC values equal to or less than the requisite values in listing 3.02 (chronic obstructive pulmonary disease).  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.03A and 3.07A.  The B criteria for listing 3.03 are as follows: "Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.03B.  The B criteria for listing 3.07 is very similar, consisting of "[e]pisodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum) or respiratory failure (documented according to 3.00C)" requiring the same frequency of physician intervention as in listing 3.03. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.07B.

The ALJ found that Dunn did not meet the A criteria, as neither her highest $FEV_1$ nor her highest FVC were at the requisite levels for her height and weight.[3] R. 14-15. As to the B criteria, the ALJ found that Plaintiff had experienced the requisite number of physician interventions for her episodes or attacks. R. 15. However, he found that she nevertheless failed to meet the B criteria of either listing because the attacks did not occur "in spite of prescribed treatment," in that Dunn had failed to follow her physicians' advice to quit smoking. *Id.* It is the ALJ's reliance on this failure to stop smoking that Dunn attacks.[4]

In his discussion on this point, the ALJ referenced 20 C.F.R. § 416.930, which provides that under certain circumstances, a claimant who has been found to be disabled may nevertheless be denied benefits because of his or her failure to follow prescribed treatment, if that treatment would restore the claimant's ability to work. R. 15. He also referenced SSR 82-59, which interprets this regulation. *Id.* Dunn's argument concerning the ALJ's step 3 determination has as its basis these references. She argues that the ALJ erred in his "finding" that Dunn met the requirements of 20 C.F.R. § 416.930 and SSR 82-59, specifically the requirement of a showing that following the prescribed treatment would have restored the ability to work. Dunn's argument is misplaced. While it is true that the

---

[3] Plaintiff's highest $FEV_1$ was 1.49, and her highest FVC was 3.29. R. 251. Listing 3.02, incorporated by reference in listings 3.03 and 3.07, requires values at or below 1.25 and 1.45, respectively, for an individual of Dunn's height and weight.

[4] Section B of listing 3.03 explicitly states that the requisite respiratory attacks must have occurred "in spite of prescribed treatment." While this language is not contained in section B of 3.07, the ALJ correctly pointed out that the requirement of adherence to prescribed treatment is set forth in 3.00C as an element of the definition of "attacks" and is incorporated by referenced in 3.07B.

ALJ mentioned this regulation and ruling, it is obvious that he did not rely upon them. Indeed, they are inapplicable to Dunn's situation: SSR 82-59 clearly indicates that the regulation applies only in situations in which the ALJ has found that the claimant is disabled and would otherwise be entitled to benefits.[5]  In the present case, the ALJ made no finding that Dunn suffers from a disabling impairment.  Rather, his findings concerning failure to follow treatment were made at step 3 and concerned the requirements of listings for asthma and bronchiectasis.  The listings contain no requirement that the "prescribed treatment" be such that it would restore a claimant's ability to work, and the ALJ made no finding on this point.  The ALJ simply determined that Dunn's episodes did not meet the B criteria of the listings because they did not occur in spite of her following her physician's instruction to quit smoking.  Any argument as to why the ALJ's determination was improper under § 416.930 or SSR 82-59 is irrelevant.

Dunn's remaining argument concerns opinions rendered by Dr. Whites.  On February 12, 2007, Dr. Whites stated that he had discussed with Dunn at length the necessity of her quitting smoking.  R. 258.  In a letter dated April 20, 2009, Dr. Whites stated as follows concerning Dunn: "I am sure that within the next year she will probably qualify for disability as long as she is smoking and would probably not meet the criteria should she quit smoking."  R. 249.  Dunn argues that these opinions were "unsuitably

---

[5]The ruling in pertinent part as follows: "An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the . . . SSA determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability."  It goes on to state as one of the requirements that the evidence establishes that the individual's impairment "precludes engaging in any substantial gainful activity."

8

vague" and did not support a finding that were she to cease smoking, she would be able to work. Dunn contends that under these circumstances, the ALJ was required to request a supplemental opinion on this point. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (ALJ has duty to fully and fairly develop the medical record).

The undersigned finds nothing vague about the statement. More to the point, as explained above, the ALJ did not make, and did not need to make, any finding as to the actual effect that cessation of smoking might have upon Dunn's condition. While this issue would have been relevant to a finding under 20 C.F.R. § 416.930, it had no bearing on the finding that she did not meet the listings. All that was required to disqualify her from the B criteria, and all that the ALJ did in fact find, was that Dunn's episodes had not occurred in spite of prescribed treatment. The record contains substantial evidence that Dunn's physicians instructed her to quit smoking but that she failed to do so. There was no need for any clarification of Dr. Whites' statements, and the ALJ did not err in failing to obtain additional information from him.

## IV. Conclusion

The undersigned concludes that the ALJ's decision was supported by substantial evidence and that no reversible errors of law were committed. Accordingly, the undersigned recommends that Plaintiff's motion be denied, the Commissioner's motion be granted, and that the decision of the Commissioner be affirmed. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 22nd day of July, 2014.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE
